CADILLAC AUTOMOBILE COMPANY OF ILLINOIS, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2657.    Decided November 23, 1926.

An amount withdrawn from a corporation by its sole stockholder
as a loan and carried on the corporation's books and balance sheets
as an account receivable upon which credit has been secured, there
being no evidence of a dividend, is within its invested capital.

*Henry W. Wales, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

Deficiency of $9,27s.5̊̊. income and profits taxes for the calendar
year 1918, arising from the reduction of invested capital (1) by a
prorated amount based on a tax for 1917 said to be greater than
the true amount, (2) by excluding the amount of an account due
the corporation on December 31, 1917, from its sole stockholder,
and (3) by excluding one-half of the increase of this stockholder's
indebtedness during 1918.

### FINDINGS OF FACT.

The petitioner is an Illinois corporation with its principal place
of business in Chicago. In 1918 it was the distributing agent for
Cadillac automobiles.

C. H. Foster was the president and, with the exception of those
holding qualifying shares, its sole stockholder. For several years
Foster's personal account had been carried on the books of the peti-
tioner. This account was charged with withdrawals made by Foster
and credited with various items, including dividends. On August
1, 1913, the debit balance due the corporation was $50,898.05. On
August 1, 1916, the debit balance was $9,443.44; on December 31,
1917, it was $80,736.72; and on December 31, 1918, it was $86,575.04.

In 1919 the Cadillac Motor Car Co. served notice that the agency
contract would be canceled, effective August 1, 1919, as it intended
to establish a direct factory branch. On August 1, 1919, the peti-
tioner ceased doing active business and it is now in process of liquida-
tion. Foster's present debit balance is substantially as large as it
was during 1918. The petitioner's surplus is at the present time and
always has been more than sufficient to take care of Foster's
indebtedness.

The principal cause of Foster's indebtedness was his withdrawal
of funds to purchase a vacant piece of property required for the
petitioner's use in the storage of cars brought in for repairs. Peti-
tioner paid no rent for this property in 1917 and 1918. In 1919 a
credit was carried to Foster's account which included $21,000 to
cover three years' rent at $7,000 a year.

A dividend of $30,000 was paid in 1917. It was credited to Foster's account under date of September 6, 1917.

On August 30, 1917, the following certification was made by Foster to accountants who were auditing the petitioner's books:

> I hereby certify that the amount to the debit of my account, namely $54,935.37, at June 30, 1917, is the correct amount of my indebtedness to the Cadillac Automobile Company of Illinois at that date.

On July 31, 1918, a similar certification was made, as follows:

> I hereby certify that the amount to the debit of my account, namely, $84,450.93, at July 31, 1918, is the correct amount of my indebtedness to the Cadillac Automobile Company of Illinois at that date.

In 1917 and 1918 balance sheets were prepared by the accountants as of the same dates as those certified to by Foster, in which Foster's indebtedness was included as a part of the assets of the petitioner. These balance sheets were presented to the National City Bank of Chicago, and based thereon credit of $200,000 was extended to the petitioner in each of those years. The petitioner borrowed sums of money from the bank; in the latter part of 1917 owed it in excess of $170,000; and at various times in 1918 owed it in excess of $190,000.

The respondent reduced the petitioner's invested capital for 1918 by prorating $28,815.46 as the amount of income tax for 1917. The correct tax for 1917 as finally determined is $25,595.12.

OPINION.

STERNHAGEN: 1. The Commissioner admits the first error and hence the invested capital should not exclude for prior year's tax more than $25,595.12, properly prorated. *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

2. The only evidence we have is to the effect that Foster borrowed some $80,000 and promised to pay it back. The corporation gave him the use of it with the full right to reclaim it. Foster, so far as the evidence shows, was solvent and able to pay the amount, and upon the strength of his promise as an account receivable the corporation, to some extent, secured credit at the bank. By its balance sheet it held out to third persons that Foster's indebtedness was part of its assets, and Foster certified to this. We know of no authority for saying that Foster or the corporation could have contended for his or its own advantage that this belonged to Foster by way of dividend. Irrespective of whether Illinois law permitted such a dividend, we can not find any evidence that one was intended. When, in the future, either in the ordinary course or in final liquidation, Foster is relieved of the indebtedness, it will be necessary to consider whether he then realizes income. Meanwhile, what is for

all other purposes a loan is not to be construed as a dividend solely to support a tax. See *Pictorial Review Co.*, 5 B. T. A. 416. Like other accounts receivable, the amount is within the petitioner's invested capital, and the Commissioner's determination is reversed. This makes the petitioner's third assignment of error unnecessary to consider, as it was raised only in the event of an adverse decision of the second.

> *Judgment for the petitioner in accordance with this opinion will be entered on 15 days' notice, under Rule 50.*